348 A.2d 96

Marshall WADDELL

v.

George SHRIBER et al., Appellants.

Supreme Court of Pennsylvania.

Argued Sept. 23, 1975.

Decided Nov. 26, 1975.

22

Robert Engel, Foster S. Goldman, Jr., Berkman, Ruslander, Pohl, Lieber & Engel, Pittsburgh, for appellants.

James D. Morton, Clayton A. Sweeney, Charles G. Knox, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

This case arises out of the dissolution of a security brokerage partnership of which appellee Marshall Wad-

dell was one of fifteen members and the subsequent formation of a new partnership by his former partners from which he was excluded. Appellants contend that the trial court erred by failing to stay the court proceedings pending arbitration and by appointing a receiver. We agree and therefore reverse.

On September 24, 1974, thirteen of the fifteen partners of appellant Babbitt, Meyers, & Waddell elected to dissolve the partnership. Under the partnership agreement, dissolution could be affected at the instance of any partner. A committee comprised of appellants Shriber, Rainier, and Naft was named to direct the liquidation of the dissolved partnership. Although appellee attended this meeting, he abstained from the decision to dissolve the partnership upon the advice of counsel.

The following day, appellee's former partners formed a new partnership, appellant B.M.W. & Co. The liquidation committee of the dissolved partnership concluded that liquidation could be accomplished by allowing each of the former partners other than appellee to contribute his share of the dissolved partnership's assets to B.M.W. & Co. and by tendering to appellee his proportional share of the assets of the dissolved partnership in cash. The committee, with the aid of a certified public accountant retained by the dissolved partnership, calculated appellee's share and offered it to him. Appellee, however, rejected the amount offered as inadequate.

On October 2, 1974, appellants, pursuant to a provision in their agreement as allied members of the New York Stock Exchange (NYSE), submitted the resulting dispute to the Board of Arbitration of the NYSE which accepted jurisdiction and which sent appropriate notice to appellee.

Four weeks later, appellee commenced this action in equity. He sought (1) an injunction restraining the individual appellants and B.M.W. & Co. from access to the

assets of the dissolved partnership, and (2) the appointment of a receiver to administer the assets of both the dissolved partnership and B.M.W. & Co. and to supervise the liquidation of the dissolved partnership. A hearing in the Court of Common Pleas of Allegheny County was held on November 8, 1974.

At the beginning of the hearing, appellants moved the court to stay the action filed by appellee until the matter had been resolved by arbitration. After argument, the court denied the motion because it concluded that the arbitration agreement did not cover the dispute. Without hearing testimony, the court concluded that a receiver should be appointed for the dissolved partnership.

Three days later, on November 11, appellants filed this appeal and a petition for supersedeas. Appellee responded by moving that the appeal be quashed. On December 4, we granted the supersedeas, and, the following day, we denied appellee's motion to quash the appeal.

Two questions are presented: (1) whether the trial court correctly denied appellants' motion to stay proceedings pending completion of arbitration; and (2) whether the court erred in appointing a receiver.[1]

### I.

In several recent cases, we have emphasized that "[s]ettlement of disputes by arbitration [is] no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts." *Mendelson v. Shrager*, 432 Pa. 383, 385, 248

---

1. Appellants seem to argue that the interpretation of the constitution of the New York Stock Exchange is governed by federal law. Their position is unpersuasive. We are not bound to apply federal law. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973) (California law governs validity of arbitration agreement between broker and its employee contained in constitution of exchange and in employment contract).

A.2d 234, 235 (1968). *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 662–663, 331 A.2d 184, 185 (1975); *Borough of Ambridge Water Authority v. Columbia*, 458 Pa. 546, ——, 328 A.2d 498, 500 (1975).

Consistent with our policy favoring arbitration, we have held that when a court must decide whether a dispute should be resolved through litigation or by arbitration under the terms of an arbitration agreement, the dispute must be submitted to arbitration if "an agreement to arbitrate was entered into and . . . the dispute involved falls within the scope of the arbitration provision." *Flightways Corp. v. Keystone Helicopter Corp.*, supra at 663, 331 A.2d at 185. *Independence Development Inc. v. American Arbitration Association*, 460 Pa. 390, 333 A.2d 781 (1975). We must therefore determine whether the parties agreed to arbitrate this dispute.

During the existence of the dissolved partnership, the individual parties to this appeal were all allied members of the NYSE. As a prerequisite to becoming allied members, each of the partners completed and signed an application which provided in part:

"I further state that I have read the Constitution and Rules of the Board of Governors of the New York Stock Exchange and I hereby make application to become an allied member of the Exchange. I hereby pledge myself to abide by the Constitution and Rules of the Board of Governors of the New York Stock Exchange as the same have been or shall be from time to time amended, and by all rules and regulations adopted pursuant to the Constitution. . . ."

Article VIII, section 1 of the NYSE constitution provides:

"Any controversy between parties who are members, allied members, member firms or member corporations shall, at the instance of any such party, and any controversy between a non-member and a member or al-

lied member or member firm or member corporation arising out of the business of such member, allied member, member firm or member corporation, or the dissolution of a member firm or member corporation, shall at the instance of such non-member, be submitted for arbitration, in accordance with the provisions of the Constitution and the rules of the Board of Directors."

 By subscribing to the constitution and rules of the NYSE, the disputants created a contractual obligation to arbitrate any controversy arising among them.[2] By signing the application for membership and by becoming a member or allied member of the exchange, a party contracts to abide by the exchange's constitution and rules not only with the exchange itself, but also with its members. "The constitution and rules of a stock exchange constitute a contract between all members of the exchange with each other and with the exchange itself." *Brown v. Gilligan Will & Co.*, 287 F.Supp. 766 (S.D.N.Y. 1968). *Rust v. Drexel Firestone, Inc.*, 352 F.Supp. 715 (S.D.N.Y.1972); *Legg, Mason & Co. v. Mackall & Coe*, 351 F.Supp. 1367 (D.D.C.1972). Because the constitution and rules of the exchange require that members and allied members submit all controversies to arbitration, the parties here, by contracting to abide by these provisions, have agreed to submit their disputes to arbitration. *Brown v. Gilligan Will & Co.*, 287 F.Supp. 766 (S. D.N.Y.1972).[3]

2. The fact that B.M.W. & Co. was not a member of the New York Stock Exchange at any time that appellee was an allied member does not affect our conclusion that there was an agreement among the parties to arbitrate. B.M.W. & Co. came into existence after the dissolution of the former partnership. Thus, as appellee admits in his brief, B.M.W. & Co. is only a formal party to the arbitration aspect of this suit. Manifestly, a party to an arbitration agreement cannot avoid arbitration by including formal parties in its pleadings.

3. Appellee argues that the provision of the partnership agreement which requires that disputes could only be submitted to arbitra-

A more difficult question is whether the controversy presented by this case "falls within the scope of the arbitation provision." *Flightways Corp. v. Keystone Helicopter Corp.*, supra at 663, 331 A.2d at 185. Appellee argues that because this dispute arose after the partnership was dissolved and, consequently, at a time when neither he nor the dissolved partnership were members of the exchange, the arbitration provision does not cover this controversy. We do not agree. The arbitration provision of the exchange constitution extends to "any controversy" between parties and is sufficiently broad to include this dispute, which arises from their relationship as members and allied members of the exchange.

In *Coenen v. R. W. Presspich & Co.*, 453 F.2d 1209 (2d Cir. 1972), which involved a dispute that arose before the party attempting to avoid arbitration had become a member of the exchange, the court described the arbitration provision in these terms:

"The drafters of the New York Stock Exchange arbitration clause intended it to be very broad. This is evident when it is compared to the Stock Exchange provision governing the arbitration of disputes between a member and a nonmember, which must arise out of the business of the member. The purpose behind the drafting of such a broad arbitration clause was, as much as possible, to keep disputes between members out of the courts. This policy is entirely consistent with the congressional grant of power to Stock

tion upon unanimous consent of the partners bars arbitration of this controversy. We cannot agree. This requirement was satisfied when all the partners agreed to abide by the constitution and rules of the exchange.

Appellee also argues that the arbitration agreement is invalid because he was unaware of the arbitration provision in the constitution of the exchange when he applied for membership. Although he may not have known of this specific provision, he did know that he was agreeing to abide by the constitution of the exchange and that his actions as an allied member would be regulated by the exchange. This is sufficient to bind the parties to the terms of the constitution. Corbin on Contracts § 607 (1960).

Exchanges to govern themselves, contained in the Securities Exchange Act of 1934. . . . To hold that the present dispute is not arbitrable would frustrate this policy by making two Stock Exchange members settle their dispute in court." (Citations omitted.)

A substantially similar problem to the one here was presented in *Isaacson v. Hayden, Stone, Inc.*, 319 F.Supp. 929 (S.D.N.Y.1970). Isaacson, an allied member of the NYSE, acquired shares of Hayden, Stone while an officer of that corporation. Subsequently, Isaacson resigned his position and served notice upon Hayden, Stone to repurchase the shares, asserting it was required to do so by its corporate charter. When Hayden, Stone refused to take such action, Isaacson brought suit in the district court. Hayden, Stone responded by moving that the controversy be submitted to arbitration and that the court action be stayed.

The court in ruling upon Hayden, Stone's motion noted that the parties had each subscribed to the provisions of the constitution of the exchange and concluded that the dispute should be arbitrated. That the controversy did not arise until after Isaacson had terminated his allied membership in the exchange did not dissuade the court from this result:

"[T]he controversy flows from and is predicated upon the business relationship between the parties which arose during their mutual membership in the Exchange. If the obligation then undertaken by [Hayden, Stone to repurchase the shares] persists for the purpose of enforcement after termination of those memberships, it also persists as a membership obligation subject to the Constitution of the Exchange. The fact that [Isaacson] commenced this action after he ceased to be a member of the Exchange does not impair or destroy the obligation to arbitrate his controversies with [Hayden, Stone] concerning their busi-

ness relationship assumed by him while he was a member of the Exchange."

Id. at 930. (Citations omitted.)

■ Similarly, this Court has concluded that when the parties to a contract have included a broad arbitration provision, disputes arising from the contractual relationship must, at the request of one of the parties, be submitted to arbitration, even if the dispute arose after the contract had been terminated. In *Chester City Authority v. Aberthaw Construction Co.*, 460 Pa. 343, 333 A.2d 758 (1975), the authority had terminated a contract with the construction company, which sought to have the propriety of the termination submitted to arbitration as provided by the contract. The authority argued that the arbitration provision applied only to controversies arising while the contract was in force and did not extend to termination of the contract. We reviewed the arbitration clause and concluded that its broad provision that "[a]ll. claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof . . . shall be decided by arbitration . . . ." should.be interpreted to extend to any dispute arising from the contractual relationship.

■ The reasons contracting parties agree to arbitration—the need for a faster means of dispute settlement than the courts can provide and the desire to utilize a less formal and less expensive decisionmaking process—are seldom affected by the termination of the contractual relationship. When parties create a contractual relationship which includes a broad arbitration agreement, they intend to include within the scope of arbitration any dispute arising from the termination of that contractual relationship unless they clearly evidence a purpose to exclude such disputes. See *Chester City Authority v. Aberthaw Construction Co.*, supra; *Isaacson v. Hayden, Stone, Inc.*, supra.

Appellee also argues that this dispute is outside the scope of the arbitration agreement because, in his view, construing the agreement to include such disputes would be contrary to Pennsylvania partnership law. He relies on section 37 of the Uniform Partnership Act[4] which provides:

> "Unless otherwise agreed the partners who have not wrongfully dissolved the partnership . . . has [sic] the right to wind up the partnership affairs; provided, however, that any partner . . . upon cause shown, may obtain winding up by the court."

Appellee interprets this section as conferring a right to any general partner of a dissolved general partnership to have the court wind-up the affairs of the partnership. A stay of his action pending arbitration, appellee asserts, would therefore be in contravention of this statute.

We are unable to accept appellee's interpretation of this provision. Here, the partners agreed to arbitrate any dispute arising from the winding-up of the partnership affairs. Section 37 cannot be read to allow any partner to withdraw from such an agreement at will. The court's role in the winding-up of a partnership is to provide an impartial tribunal to resolve disputes which cannot be settled by private means. Arbitration serves this function. Thus, when the partners have validly agreed to arbitrate disputes arising from the winding-up of the partnership, a partner attempting to avoid arbitration cannot meet the statutory requirement of "cause shown" to justify court intervention prior to arbitration. Our interpretation of section 37 is consistent with the policy favoring arbitration. *Mendelson v. Shrager*, supra; *Flightways Corp. v. Keystone Helicopter Corp.*, supra; *Borough of Ambridge Water Authority v. Columbia*, supra.

4. Act of March 26, 1915, P.L. 18, § 37, 59 P.S. § 99 (1964).

Thus, the arbitration contract entered by the parties mandates that any dispute arising from their relationship as members of the NYSE be submitted to arbitration at the request of one of the parties. This dispute involves the means by which that relationship should be terminated. They have therefore agreed to resolve it by arbitration.

## II.

The remaining question is whether the trial court correctly concluded that a receiver be appointed.

■■■■ Appellee argues that section 37 of the Uniform Partnership Act allows a partner of a dissolved partnership to obtain the appointment of a receiver to effect the winding-up and liquidation of the partnership. However, section 37 makes no provision for the appointment of a receiver, nor does any other section of the Act. The power of a court to appoint a receiver in cases arising under section 37 stems not from the statute but from the courts' equitable powers to appoint a receiver as an ancillary remedy in an action for another form of relief. *McDougall v. Huntingdon & BR. T. R. & C. Co.*, 294 Pa. 108, 114–15, 143 A. 574, 577 (1928). We must decide whether appellee established his entitlement to the equitable relief of a receiver.

■■■■ Our determination that the dispute relating to dissolution of the partnership must be submitted to arbitration does not necessarily mean that appellee is not entitled to the appointment of a receiver. In cases arising out of the dissolution of a partnership, a court may appoint a receiver to liquidate the partnership, to obtain an accounting of the proceeds, and to distribute the assets. Here, because of the pending arbitration, appointment of a receiver for these purposes would be inappropriate. Nevertheless, a receiver might still be appointed if a party could show that such relief is necessary to as-

sure that the partnership assets are not dissipated before the arbitration proceedings are complete. *Sellers v. Hanratty*, 343 Pa. 316, 22 A.2d 697 (1941).

We have said that the appointment of a receiver should not be hastily undertaken:

> " 'The power to appoint a receiver is a delicate one, which is jealously safeguarded, and reluctantly exercised, by the courts. The power should be exercised sparingly, with caution and circumspection, and only in an extreme case under extraordinary circumstances, or under such circumstances as demand or require summary relief.' "

*Tate v. Philadelphia Transportation Co.*, 410 Pa. 490, 500, 190 A.2d 316, 321 (1963). See *McDougall v. Huntingdon & BR. T. R. & C. Co.*, supra, 294 Pa. at 116–17, 143 A. at 577–78. We have in a number of cases discussed guideposts to aid a court in determining whether a receiver should be appointed.

> "[C]ourts will not appoint receivers where there is well-founded suspicion it would be followed by serious injustice or injury to the rights of all parties interested. The court, before any appointment is made, will act with the utmost caution. Receivers will not be appointed unless the chancellor is convinced the right is free from doubt, the loss irreparable, with no adequate legal remedy, and the relief sought is necessary.
>
> . . .
>
> "Illustrating these general principles, a receivership will not be granted where it will work irreparable injury to the rights and interests of others and greater injury will probably result from the appointment than if none were made, or where the appointment will do no good."

*McDougall v. Huntingdon & BR. T. R. & C. Co.*, supra at 118, 143 A. at 578. See *Tate*, supra; *Moffett v. Peirce*, 344 Pa. 16, 24 A.2d 448 (1942).

Appellee bases his right to have a receiver appointed on the following:

1) that appellee had been a partner in the dissolved partnership;

2) that appellants have possession of the assets of the dissolved partnership in breach of the fiduciary duty they owe appellee under the Uniform Partnership Act;

3) that appellee is not a partner of appellant B. M. W. & Co.;

4) that in violation of the partnership agreement, the individual appellants and the dissolved partnership have failed to wind up the affairs of that partnership and liquidate its assets.

These assertions are insufficient to establish that the appointment of a receiver is necessary. Appellee has neither alleged nor proved that the assets of the dissolved partnership are being dissipated. Nothing in the record supports a conclusion that, absent a receiver, the arbitration award will be frustrated by the dissipation of the partnership assets. The trial court therefore abused its discretion by concluding that a receiver should be appointed.

Decree reversed. Proceedings stayed pending arbitration. Each party pay own costs.

MANDERINO, J., did not participate in the consideration or decision of this case.