**Devlin v. Shearson Hayden Stone, Inc.**

*Michael L. Murphy,* for plaintiff.
*Christopher S. Underhill,* for defendant.

SURRICK, *J.,* August 26, 1981—This case is an action in assumpsit brought by Bernard J. Devlin against Shearson Hayden Stone, Inc. for the alleged breach of a Commodity Customer Agreement (hereinafter referred to as agreement or brokerage contract). Defendant filed an answer containing new matter in which it alleged that the brokerage contract contained an arbitration clause which applied to this alleged breach of contract. Plaintiff filed a reply to new matter acknowledging the existence of the brokerage contract but responding that, under the contract, he had the option of electing to arbitrate this dispute but had chosen not to do so. Plaintiff also denied defendant's assertion that it had elected to proceed to arbitration in accordance with the agreement. Thereafter, defendant filed a motion for summary judgment based upon plaintiff's obligation to arbitrate this dispute under the agreement. Attached to the motion is an affidavit with exhibits in support of defendant's contention that it had formally requested that plaintiff proceed to arbitration. After consideration of briefs

submitted by counsel, we entered an order dated March 2, 1981, granting defendant's motion. Plaintiff has filed an appeal from that order thus necessitating this opinion.

The arbitration agreement in the subject brokerage contract provides as follows:

"ARBITRATION AGREEMENT
Any controversy arising out of or relating to my account, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the American Arbitration Association of the Board of Directors of the New York Stock Exchange, Inc., as I may elect. If I do not make such election by registered mail addressed to you at your main office within five days after demand by you that I make such election, then you may make such election. Judgment upon any award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

While the Commodity Futures Trading Commission (CFTC) encourages the settlement of disputes by arbitration, it requires that your consent to such an agreement be voluntary. You need not sign this Arbitration Agreement to open an account with Shearson Hayden Stone Inc. (See 17 CRF 180.1-180.6)

By signing this Arbitration Agreement, you may be waiving your right to sue in a court of law. But you are not waiving your right to elect later to proceed pursuant to Section 14 of the Commodity Exchange Act to seek damages sustained as a result of a violation of the Act. In the event a dispute arises, you will be notified that Shearson Hayden Stone intends to submit the dispute to arbitration. If you believe a violation of the Commodity Exchange Act

is involved and you prefer to request a Section 14 "Reparations" Proceeding before the CFTC, you will still have 45 days in which to make that election."

Defendant contends that the foregoing agreement to arbitrate is valid and enforceable, that the subject dispute is included in the language of the arbitration provision and that the provisions of the Federal Arbitration Act of July 30, 1947, 61 Stat. 670, 9 U.S.C.A. § 1 et seq., control the disposition of this dispute.[1] We agree that the abitration agreement is valid and enforceable and that the subject dispute comes within the scope of the above recited provision. We do not agree that the Federal Arbitration Act controls this dispute.[2] For the reasons hereinafter set forth, we believe that this case is governed by the rules applicable to Pennsylvania common law arbitration. This being the case, our order of March 2, 1981, is proper.

The question of whether or not the Federal Arbitration Act applies to proceedings in state courts is one of first impression in this Commonwealth. Our research discloses, however, that a number of Federal courts have discussed the nature and scope of

1. Section 2 of the Federal Arbitration Act makes it applicable to "maritime transactions" or contracts involving "commerce among the several states or with foreign nations." See Act of July 30, 1947, ch. 213, §1, 61 Stat. 670. 9 U.S.C.A. §1. The pleadings establish that this dispute involves commerce.

2. Even if we had concluded that the Federal Arbitration Act applied, plaintiff would not be permitted to proceed with this action. Under Section 3 of that act, we would be required to direct that the matter proceed to arbitration and grant a stay of this action pending completion of the arbitration: 9 U.S.C.A. §3. This same result would be reached under the Pennsylvania Arbitration Act: act of April 25, 1927, P.L. 381, as amended, 5 P.S. § 162, (non repealed).

this act. The leading case on the subject appears to be Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F. 2d 402 (2d Cir. 1959), cert. denied 364 U.S. 801, 81 S. Ct. 27 (1960). In language which is often quoted by other courts, the 2nd Circuit reached the following conclusion:

". . . We think it is reasonably clear that the Congress intended by the Arbitration Act to create a new body of federal substantive law affecting the validity and interpretation of arbitration agreements . . . This indicates a congressional intention to rely on the admiralty power . . . and the commerce power . . .

To be sure the Act is purely procedural in character and is intended to be applicable only in the federal courts. But Section 2 declaring that arbitration agreements affecting commerce or maritime affairs are valid, irrevocable, and enforceable goes beyond this point (i.e., mere procedure) and must mean that arbitration agreements of this character, previously held by state law to be invalid, revocable or unenforceable are now made valid, irrevocable and enforceable. This is a declaration of national law equally applicable in state or federal courts."

See also: Litton, RCS Inc. v. Pa. Turnpike Commission, 376 F. Supp. 579 (E.D.Pa. 1974), affirmed, 511 F. 2d 1394 (Cir. 1975); Guinness-Harp Corp. v. Schlitz Brewing Co. 613 F. 2d 468 (2d Cir. 1980); Commercial Metals Co. v. Balfour, Guthrie & Co., Ltd., 577 F. 2d 264 (5th Cir. 1978).[3]

The Supreme Court of the United States in the

---

3. It is interesting to note that, although all of these cases characterize the Federal Arbitration Act as constituting federal substantive law, they also all agree that the act does not create an independent source of Federal subject matter jurisdiction.

case of Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801 (1967), considered the question of the application of the Federal Arbitration Act. As in Robert Lawrence, the court was dealing with the application of the act by Federal Courts. The District Court and the Circuit Court of Appeals for the Second Circuit, both relying on the broad language of Robert Lawrence, had applied the Federal Arbitration Act in a case involving diversity jurisdiction. The Supreme Court, observing that Congress may prescribe how Federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate, affirmed the Second Circuit "albeit it for somewhat different reasons" stating at p. 405:

"The question in this case, however, is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. See Bernhardt v. Polygraphic Co., supra., [350 U.S.] at 202, and concurring opinion, at 208 [76 S. Ct. at 275 and at 279]. Rather, the question is whether Congress may prescibe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be the affirmative. And it is clear beyond dispute that the federal arbitration statute is based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.' H.R. Rep. No. 96, 68th Cong., 1st Sess. 1 (1924); S. Rep. No. 536, 68th Cong., 1st Sess. 3 (1924)."[4]

---

4. Justice Fortus wrote for the majority. Justices Black and Douglas dissented for reasons not relevant to our discussion. Only Justice Harlan would have affirmed the judgment below on the basis of Robert Lawrence.

We are aware of no case in which the Supreme Court has addressed and answered the question of whether Congress may prescribe how state courts are to conduct themselves with respect to the Federal Arbitration Act. We are aware that a number of state courts have addressed the issue. These courts have generally concluded that, when considering an arbitration clause found in a contract involving commerce, the Federal Arbitration Act becomes the substantive law of their state.[5] Several arguments are usually advanced in support of this conclusion. We find none of them compelling.

First, it is suggested that the Federal Arbitration Act is based upon the commerce clause of the U.S. Const., Art. I, §8, and that the supremacy clause, U.S. Const., VI, §2, makes the statute supercede any state in the field. However, such is not always the case. The test for determining whether a Federal statute involving commerce preempts the state law regulating the same phase of that commerce is found in the case of Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 83 S. Ct. 1210 (1963). In that case, the United States Supreme Court held as follows at p. 142:

---

5. In the matter of Rederi, 25 N.Y. 2d 576, 307 N.Y. S. 2d 660 (1970); United Nuclear Corp. v. General Atomic Co., 93 N.M. 105, 597 P. 2d 290 (1979); Wm. A. Smith Contracting Co. v. Missouri Pacific R.R. Co., 575 S.W. 2d 865 (1978); Episcopal Housing Corp. v. Federal Insurance Co., 269 S.C. 631, 239 S.E. 2d 647 (1977); Main v. Merrill Lynch, Pierce, Fenner & Smith Inc., 67 C.A. 3d 19, 136 Cal. 378 (1977); West Point-Pepperell, Inc. v. Multi-Line Industries, Inc., 231 Ga. 329, 201 S.E. 2d 452 (1973); In re Hecla Mining Co. v. Bunker Hill Co., 617 P. 2d 861 (1980); Mamlin v. Thomas, Inc., 490 S.W. 2d 634 (1973); Northwest Mechanical, Inc. v. P.U.C. of the City of Virginia, Sup. Ct. of Minnesota, 283 N.W. 2d 522 (1979); Pinkis v. Network Cinema Corp., 9 Wash. App. 337, 512 P. 2d 751 (1973); Pathman Const. Co. v. Knox County Hospital Association, 164 Ind. App. 121, 326 N.E. 2d 844 (1975).

"The principle to be derived from our decisions is that federal regulation of a field of commerce should not be deemed preemptive of state regulatory power in the absence of persuasive reasons—either that the nature of the regulated subject matter permits no other conclusion, or that Congress has mistakably so ordained."

In applying the test, we observe that the Federal Arbitration Act does not expressly prohibit the state from exercising concurrent jurisdiction in the field of interpreting and enforcing Arbitration Agreements found in contracts involving commerce. Moreover, we can see no persuasive reason to apply Federal law rather than state law in the present case. Indeed, it should be noted that the language of the Federal Arbitration Act is very similar to and, in some instances, identical to the language of The Pennsylvania Arbitration Act. In addition, the national policy in favor of arbitration agreements finds full reflection in the present common law of Pennsylvania. In the case of Waddell v. Shriber, 465 Pa. 20, 348 A. 2d 96 (1975), our own Supreme Court held at p. 25 as follows:

"In several recent cases, we have emphasized that [s]ettlement of disputes by arbitration [is] no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the Courts., Mendelson v. Shrager, 432 Pa. 383, 385, 248 A. 2d 234, 235 (1968). Flightways Corp. v. Keystone Helicopter Corp., 459 Pa. 660, 662-663, 331 A. 2d 184, 185 (1975); Borough of Ambridge Water Authority v. Columbia, 458 Pa. 546, ____, 328 A. 2d 498, 500 (1975).

"Consistent with our policy favoring arbitration,

we have held that when a court must decide whether a dispute should be resolved through litigation or by arbitration under the terms of an arbitration agreement, the dispute must be submitted to arbitration if 'an agreement to arbitrate was entered into and . . . the dispute involved falls within the scope of the arbitration provision.' Flightways Corp. v. Keystone Helicopter Corp., supra at 663, 331 A. 2d at 185. Independence Development Inc. v. American Arbitration Association, 460 Pa. 390, 333 A. 2d 781 (1975)."

Next it is argued that it appears that the clear intent of Congress was to make available to the business world the benefits of arbitration and to ease congestion in the courts. As above observed, this is already the policy of our state reflected in both statutory and common law arbitration.

In addition, it is argued that, by passing the Federal Arbitration Act, Congress intended to inject uniformity into the field of commerce and into disputes which may arise in connection therewith. It is hard to imagine how uniformity would be threatened by our decision not to apply the Federal Arbitration Act in the present case. If Pennsylvania had a policy against arbitrations or if the arbitration scheme in this state substantially thwarted the goals which Congress sought to achieve with this legislation, this argument might have merit. However, such is not the case, at least in Pennsylvania.

Finally, it is contended that not applying the Federal Arbitration Act in state court will lead to "forum shopping." Again, this is not a threat here since Pennsylvania law will provide the same practical results as the Federal Arbitration Act.

In rejecting the foregoing arguments, we find ourselves aligned with our neighbor to the south, the State of Delaware. In the case of Pullman, Inc.

v. Phoenix Steel Corp., 304 A. 2d 334, 338 (1973), the Superior Court of Delaware refused to apply the Federal Arbitration Act in a matter involving commerce stating:

"Simply stated, the Supreme Court in *Prima Paint* supra., held that the United States Arbitration Act established a substantive rule of federal law which relieved the Federal Courts of the necessity of applying State law in diversity cases under the Erie-Guarranty Trust Doctrine. The Court did not hold, as argued by Phoenix, that Congress had preempted the field of contracts in interstate commerce to the extent that State courts are obliged to apply the federal law in such cases."

We agree that Congress did not "preempt the field" with the Federal Arbitration Act. We see nothing in "the nature of the regulated subject matter which permits no other conclusion," nor is it clear to use "that Congress has unmistakably so ordained." For all of these reasons, we will proceed to apply state law in the instant case.

Having made this determination, we must now look at the language of the agreement to determine whether the instant dispute is appropriate for arbitration. As hereinabove discussed, the case of Waddel v. Shriber, supra., sets up a two-step test for determining when a given dispute should be submitted to arbitration. The first step is to determine whether or not the parties entered into an agreement to arbitrate. The arbitration agreement above recited certainly appears to qualify as an agreement to arbitrate. The first sentence of the first paragraph of the arbitration clause unequivocally provides:

"Any controversy arising out of or relating to my

account to transactions with you for me or this agreement or the breach thereof, shall be settled by arbitration . . . ."

Moreover, the second paragraph of the arbitration agreement advises that consent to arbitration is voluntary and that the brokerage contract is not conditioned upon each consent. In addition, in order to give the arbitration agreement validity, a separate signature is required in addition to the signature required for the brokerage contract.

Plaintiff asserts that the third paragraph of the arbitration agreement casts some doubt over whether "plaintiff has voluntarily waived his right to sue in a court of law by signing the agreement," and that at least a factual issue is created in this regard thus precluding the entry of a summary judgment. We disagree.

A reading of the third paragraph reveals that it simply constitutes notice to plaintiff on the right to request "reparations" from defendant in a proceeding before the Commodities Futures Trading Commission. This is an additional administrative remedy available to plaintiff. Its existence creates no issue of fact. Neither does plaintiff anywhere allege facts from which we could conclude that the arbitration agreement is anything other than what it specifically provides, a "voluntary" consent to arbitrate "any controversy." We, therefore, conclude that the mere existence of this administrative remedy and the notice thereof as contained in paragraph 3 has no affect upon the validity or operation of the arbitration agreement and creates no factual issue which precludes entry of a summary judgment in this litigation. Moreover, it is our duty to construe apparently conflicting paragraphs of a

contract to be consistent, if that is possible. Binenstock Trust, 410 Pa. 425, 190 A. 2d 288 (1963). We do not find the language of paragraph 3 inconsistent with the clear intention of the parties expressed in the other provisions of the arbitration agreement, to wit, to arbitrate all disputes arising under the brokerage contract.

The second step of the Waddell test is the determination of whether the subject dispute falls within the scope of the arbitration provision. This is essentially a claim for damages for breach of contract. Plaintiff alleges that defendant mishandled a transaction involving the London Gold Exchange. On the face of the record, at the time of the alleged breach, defendant was acting as plaintiff's broker under the brokerage contract. This alleged breach by defendant is clearly covered by the arbitration agreement. The two steps of the Waddell test having been satisfied, we conclude that the matter should be submitted to arbitration.

We now must determine what type of arbitration applies to this dispute. Does this arbitration agreement come within the Uniform Arbitration Act of October 5, 1980, P.L. 693, §501(a), 42 Pa.C.S.A. §7303, or is it governed by the rules of Pennsylvania common law arbitration?

The Superior Court, in the case of Campbell-Ellsworth Inc. v. Holy Trinity Serbian Orthodox Church—School Congregation, 233 Pa. Superior Ct. 126, 336 A. 2d 346 (1975), held as follows in this regard, at p. 130:

"It is well-settled that the Arbitration Act of 1927 did not abolish the applicability of common law rules to the enforcement of agreements to arbitrate . . . Therefore, the parties are free to designate that either statutory or common law rules shall apply.

When the agreement is silent, common law rules control enforcement of the award, unless the parties subsequently agree, expressly or impliedly, to apply the Act . . ."

In addition, our Supreme Court has held that, if a contract contains an arbitration clause which calls for arbitration pursuant to the rules of the American Arbitration Association and further provides that the arbitration awards shall be binding, then the arbitration is one which falls under the Pennsylvania common law: Wingate Construction Co. v. Schweizer Dipple, Inc., 419 Pa. 74, 213 A. 2d 275 (1965). In the instant case, the agreement is not silent. The parties have agreed that the rules of the American Arbitration Association are to apply and that the award is binding. Thus we conclude that the Pennsylvania common law controls.

Since this case falls within Pennsylvania common law arbitration, the granting of defendant's motion for summary judgment is appropriate. In the case of Ambridge Borough Water Authority v. Columbia, 458 Pa. 546, 328 A. 2d 498 (1974), our Superior Court held that once a dispute has been submitted to common law arbitration, all of the questions of law and fact are within the province of the arbitrators. Also see: Wark & Co. v. Twelfth & Sansom Corp., 378 Pa. 578, 107 A. 2d 856 (1954). In addition, Pennsylvania common law arbitration permits only very narrow judicial review. The decision of the arbitrators is reviewable only where there is fraud, misconduct, corruption or some other irregularity: Wingate Construction Co. v. Schweizer Dipple, Inc., supra.; Campbell-Ellsworth Inc. v. Holy Trinity supra. Since all issues of law and fact in the instant dispute must be submitted to the arbitrators whose decision will not be

reviewed except for fraud, misconduct, corruption or some other irregularity, there is nothing remaining for this court to determine.

Plaintiff finally asserts that there is an issue of fact in the instant case revolving around whether defendant has properly "elected" to invoke the arbitration agreement. The procedure for election is provided in the arbitration agreement hereinabove set forth. Defendant filed an affidavit with its motion for summary judgment with two letters attached. The affidavit and attachments establish defendant's demand for arbitration. By failing to respond with a counter-affidavit, plaintiff has admitted defendant's election: Phaff v. Gerner, 451 Pa. 146, 303 A. 2d 826 (1973); Johnston v. Parole Bd., 34 Pa. Commonwealth Ct. 113, 383 A. 2d 233 (1978).

Plaintiff contends that the affidavit attached to defendant's motion for summary judgment is improper and itself raises issues of credibility that can only be decided by the jury. Such affidavits are specifically permitted under the Pennsylvania Rules of Civil Procedure: Pa.R.C.P. 1035(b). Moreover it cannot reasonably be argued that the affidavit in question raises an issue of credibility when the authenticity of the affidavit and the two attached letters went unchallenged by plaintiff. We conclude that defendant's election to arbitrate this dispute has been established.

For all of the foregoing reasons, we entered the order of March 2, 1981, granting defendant's motion for summary judgment.