Ambridge Borough Water Authority, Appellant,
*v.* Columbia.

Argued September 28, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDER-INO, JJ.

*Joseph M. Stanichak,* for appellant.

*Francis H. Patrono,* with him *Eugene A. Caputo, Patrono, Ceisler, Edwards & Pettit,* and *Caputo and Walko,* for appellee.

OPINION BY MR. JUSTICE NIX, November 20, 1974:

The single question to be decided in this appeal is whether the dispute which has presently arisen between the parties to an employment contract should be resolved through arbitration pursuant to paragraph 17 of that employment agreement. After full consideration, we are of the view that the controversy should be resolved as provided by the parties in paragraph 17 of their agreement and therefore affirm the decision of the trial court.

The Borough of Ambridge Water Authority commenced an action in equity requesting that the court declare an employment contract between it and the appellee, J. Z. Columbia, null and void and that the appellee be enjoined from seeking arbitration. In response Columbia, through his counsel, filed preliminary objections in the nature of a demurrer. The trial court sustained the objections and dismissed appellant's complaint granting leave to raise the matters asserted therein in the proceedings before the arbitrator. It is that decree which is presently before us.

The complaint alleged that Columbia had been employed for a number of years by the Authority as its Plant Manager. On December 14, 1967, a new contract of employment was entered into between the parties for a period of five years wherein it was provided: "17. That any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules of the American Arbitration Association in existence at the time of the said controversy or claim, and judgment upon the award rendered may be entered in any court having jurisdiction thereof, or, by agreement both of

the Authority and Employee, said controversy or claim may be referred to a board of three disinterested arbitrators, the one to be selected by the Authority, the second by the Employee and the third by the two arbitrators so selected. The decision of the said association or of the said board of arbitrators shall be final. The cost of obtaining a decision by either of these methods shall be borne by the Authority."[1]

The Authority, after establishing mandatory retirement policies at age sixty-five, did on June 30, 1971, involuntarily retire appellee and relieved him of further duties as Plant Manager. Appellee did not challenge the legality of his termination nor is he claiming damages for the balance of the term, the claim raised was as to his right to payment under paragraph 10(b)(ii)[2] under the agreement and compensation due under paragraph 13 for accrued vacation time.

Fundamental in our law of contracts is the axiom that parties may write their own contracts, and that it is the function of the courts to interpret those contracts and to enforce them as made. It is now recognized in this Commonwealth that the enforcement of agreements by the parties to submit future disputes, that may arise under their agreement, to a tribunal other than the courts is not against public policy and is consistent with the concept of the courts' role in

---

[1] This agreement was to become effective January 1, 1968. Paragraph 18 of the agreement (as it appears in the record before us) sets forth January 1, 1967, as the effective date but in view of the fact that the agreement was not reached until December 14, 1967 and there was no intention for retroactive application (neither party so suggests) it is obvious that this is an error.

[2] Paragraph 10(b)(ii) which provides that upon termination of the employment by the Authority: (ii) The Authority shall pay the Employee not less than one month's salary at the rate at which he is being paid at the time of the termination and, in addition, one month's salary, at the then current rate, for each year of the Employee's employment . . ."

dealing with the contractual relationships of individuals. "Settlements of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.

Contracts that provide for arbitration are valid, enforceable and irrevocable, save upon such grounds as exist in law or in equity for the revocation of any other type of contract. This is equally true of both common law arbitration and the arbitration provided in the Act of 1927." *Mendelson v. Shrager*, 432 Pa. 383, 385, 248 A.2d 234, 235 (1968). See also *Capecci v. Capecci, Inc.*, 392 Pa. 32, 139 A.2d 563 (1958).

In *Wyoming Radio v. National Association of Broadcast Employees and Technicians*, 398 Pa. 183, 186, 157 A.2d 366, 367 (1960), we stated: "Arbitration is not a makeshift or a subterfuge. It is not an excuse for delay or a fan for the cooling off of tempers. It is a solemn and serious undertaking for the attainment of justice, and when parties engaged in a common enterprise agree to settle by arbitration all differences which may arise between them they are bound by their commitment as much as if they had entered into a stipulation in Court."

Appellant contends that since their present challenge goes to the validity of the contract itself this dispute must be resolved by the court and cannot be submitted to arbitration. It asserts that it (the Authority) was without power to enter a contract of employment for a term of five years and that its attempt to do so was of no legal effect.

In a series of cases involving uninsured motorist coverage, we have adopted the policy: "The arbitration clause, in our view, indicates that the parties contemplated one method, and one method only, for the resolution of disputes under this coverage. That method was

arbitration and all such disputes should be so decided." *Allstate Insurance Company v. McMonagle*, 449 Pa. 362, 296 A.2d 738, 739 (1972) ; *National Grange M. Insurance Company v. Kuhn*, 428 Pa. 179, 185, 236 A.2d 758, 761 (1968). In applying that view, we have held that the question as to whether the alleged tort feasor was in fact an uninsured motorist was an issue of fact to be determined by the arbitrator, *National Grange M. Insurance Company v. Kuhn, supra.* That an issue of forfeiture of the rights of policyholders because of alleged noncompliance with certain policy requirements was a question to be decided by the arbitrator, *Harleysville Mutual Insurance Company v. Medycki*, 431 Pa. 67, 244 A.2d 655 (1968). That the arbitrator and not the courts had the authority to determine the applicability of a statute of limitations to insured's claim. *Merchants Mutual Insurance Company v. American Arbitration Ass'n*, 433 Pa. 250, 248 A.2d 842 (1969). That the question of whether the claimant was a member of the household of the insured was arbitrable *Allstate Insurance Company v. Taylor*, 434 Pa. 21, 252 A.2d 618 (1969). Most recently we held that the issue of whether the policy itself was in force at the time of the accident was also arbitrable. *Allstate v. McMonagle, supra.*

Appellant argues that this rationale giving full effect to the intention of the parties in selecting a forum, other than the courts, for the resolution of disputes, should not be extended to an employment contract. We have found no precedent nor can we perceive of any reason why such a distinction should be drawn. Where parties of equal bargaining positions mutually agree that their future disputes, if they arise, be determined by arbitration, they should be bound by that provision when the dispute in fact arises and not be permitted to avoid the consequences of such action by specious challenges which allegedly questions the validity of

the contract itself.[3]   Here, there is no question that there was a mutual agreement to arbitrate future disputes.   Equally as clear is that there is no challenge to the capacity of the Authority to enter into an agreement providing for arbitration.   Furthermore, the parties operated under this agreement for a period of three and one-half years.   In this posture the lower court properly refused to reach the merits of appellant's claim of lack of capacity.   It having been determined that the parties had agreed to arbitration the only issue left for the courts to consider was whether the dispute in question fell within the purview of the submission.   *Women's SPCA v. Savage*, 440 Pa. 34, 269 A.2d 888 (1970); *Westmoreland Hospital Association v. Westmoreland Construction Company*, 423 Pa. 255, 223 A.2d 681 (1966); *Philadelphia Marine Trade Association v. Longshoremen's Association, Local 1291*, 382 Pa. 326, 115 A.2d 733 (1955).   But see, *Washington Arbitration Case*, 436 Pa. 168, 259 A.2d 437 (1969) (where it was held an arbitration panel exceeded its authority).

Paragraph 17 is framed in the broadest conceivable language from which it must be concluded that the parties intended the scope of the submission to be unlimited.   Where, as here, there is an unlimited arbitration clause, any dispute which may arise between the

---

[3] Some text writers have even expressed the view that the very existence of the principal contract may be within the scope of the submission to arbitration.   In 6A Corbin On Contracts (1962) §1444A, the authors state at page 457: "It is quite possible that a provision for arbitration may be separate from and independent of the other terms of a contract or transaction, even though it is agreed upon simultaneously with and forms a part of that larger contract or transaction.   If the provision is thus separate and independent, the issue of *the very existence of the principal contract itself may be within the scope of the submission to arbitration.*" (Emphasis supplied).

parties concerning the principal contract is to be settled pursuant to its terms. 6 Williston On Contracts (Revised Edition) §1924. This concept was well stated by the late Mr. Justice MUSMANNO speaking for the Court in *Wyoming Radio v. National Association of Broadcast Employees & Technicians, supra* at 187, 157 A.2d at 367: "It cannot be doubted that a legitimate dispute arose between the company and the union, and it is equally unquestioned that the dispute was not settled. It is not now within the province of the company to determine whether the dispute should or should not be arbitrated. There is no limitation in the contract as to the nature of the dispute which shall be cognizable by arbitration. The person who offers carte blanche to another to enter the temple of arbitration may not later on impose restrictions as to the type of clothing the other person shall wear when he presents himself at the doors of the temple." Here the controversy centers around appellee's claims for pay due him under the contract upon termination of his employment. It cannot be seriously questioned that a dispute of this nature was intended to fall within the provisions of paragraph 17 nor will we permit this obvious expression of the parties' intention to be frustrated by appellant's belated attack upon the validity of the principal contract.

The Decree of the trial court sustaining the Preliminary Objections and dismissing the Complaint in Equity without prejudice to raise the matters asserted therein in a proceeding before the arbitrator is affirmed.

Each party to pay own costs.