## Two Rivers Terminal L.P. v. Benatec Associates Inc.

C.P. of Dauphin County, no. 4530 S 1993.

*Kenneth L. Joel,* for plaintiff.
*Patricia C. Camvel,* for defendant.

BEFORE: TURGEON, LEWIS AND EVANS, *JJ.*

TURGEON, *J.,* May 7, 1998—This action was commenced by plaintiff Two Rivers L.P. alleging defendant Benatec Associates Inc. provided a deficient environmental report concerning a property purchased by Two Rivers. Currently before the court are Benatec's preliminary objections to Two Rivers' amended complaint. For the reasons set forth below, Benatec's objection asserting the existence of alternate dispute resolution is sustained.

## FACTS

In 1990, Two Rivers, a limited partnership, was contemplating the purchase of a Duncannon bulk petroleum storage facility or "tank farm" owned by Chevron. One of Two Rivers' general partners was James Talley, who was also a corporate officer with City-Suburban Oil

Company. In October 1990, Talley, on behalf of City-Suburban, entered into an agreement with Benatec for the performance of an environmental assessment of the Chevron site. Talley signed the agreement in his capacity as City-Suburban's president. The agreement contained a mandatory arbitration provision, as follows:

"5.1 *All claims, counterclaims, disputes and other matters in question between the parties hereto arising out of or relating to this agreement or the breach thereof will be decided by arbitration* in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement so to arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in this paragraph will be specifically enforceable under the prevailing law of any court having jurisdiction." (Complaint, exhibit A.) (emphasis added)

After Two Rivers purchased the property, it discovered significant site contamination which Benatec had allegedly missed. In Two Rivers' amended complaint, it alleges breach of contract, promissory estoppel, negligence/malpractice and negligent misrepresentation for Benatec's failure to discover the scope of the contamination. Two Rivers argues Talley's involvement in the agreement gives Two Rivers rights thereunder and that Benatec should have known Two Rivers was relying on the environmental report in deciding whether to purchase the property. Plaintiff alleges in addition that Benatec had dealings not only with Talley but with two other Two Rivers' general partners. Furthermore, some of Benatec's compensation was paid by a check drawn on the account of a Two Rivers partner.

## LEGAL DISCUSSION

Benatec raises various preliminary objections to the amended complaint including existence of alternate dis-

pute resolution (arbitration), motion to strike scandalous and impertinent material, failure to attach a writing, failure to plead the existence of a condition precedent and demurrers to all claims for relief. Since we find all of Two Rivers' claims are subject to arbitration, we address only that issue.[1]

The existence of an arbitration agreement, as a form of alternate dispute resolution, is properly raised by preliminary objection. Pa.R.C.P. 1028(a)(6), 42 Pa.C.S. "Preliminary objections, the end result of which would be dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt." *Hazleton Area School District v. Bosak*, 671 A.2d 277, 281 (Pa. Commw. 1996). "The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his

---

1. We briefly address, and dismiss, Two Rivers' argument that Benatec is estopped from or has waived the raising of the arbitration provision since Benatec failed to affirmatively seek arbitration for over four years. The right to enforce an arbitration clause may be waived, either expressly or by implication. *Goral v. Fox Ridge Inc.,* 453 Pa. Super. 316, 321, 683 A.2d 931, 933 (1996). An effective waiver under Pennsylvania law requires a conscious and deliberate choice to relinquish a known right; waiver by implication or inference requires conduct "so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Marranca General Contracting v. Amerimar,* 416 Pa. Super. 45, 49, 610 A.2d 499, 501 (1992).

In both *Goral* and *Marranca*, the Superior Court found waiver where the defendant had sought to enforce arbitration after unfavorable decisions in the court proceedings. The Superior Court concluded it would not allow such "second bites at the apple." In this case, Benatec raised the existence of the arbitration provision at its first opportunity, by filing preliminary objections to Two Rivers' complaint, which was not filed by Two Rivers until 1997. See *Goral, supra* at 322-23, 683 A.2d at 934.

or her right to relief." *Id.* Our Superior Court has recently recited the law with regard to arbitration, as follows:

"As a matter of public policy, the courts of this Commonwealth strongly favor the settlement of disputes by arbitration. *Langston v. National Media Corporation,* 420 Pa. Super. 611, 615-16, 617 A.2d 354, 356 (1992) (citations omitted); *Dickler v. Shearson Lehman Hutton,* 408 Pa. Super. 286, 294, 596 A.2d 860, 864 (1991), *allocatur denied,* 532 Pa. 663, 616 A.2d 984 (1992). '[W]hen parties agree to arbitration in a clear and unmistakable manner, the court will make every reasonable effort to favor such agreements.' *DiLucente Corporation v. Pennsylvania Roofing Co. Inc.,* 440 Pa. Super. 450, 456-57, 655 A.2d 1035, 1038 (1995), *allocatur denied,* 542 Pa. 647, 666 A.2d 1056 (1995) (citing *Hassler v. Columbia Gas Transmission Corporation,* 318 Pa. Super. 302, 307, 464 A.2d 1354, 1357 (1983)). When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision. *Messa v. State Farm Insurance Company,* 433 Pa. Super. 594, 597, 641 A.2d 1167, 1168 (1994) (citations omitted); *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 376-77, 632 A.2d 903, 905 (1993) (citations omitted). 'If a valid arbitration agreement exists between the parties and appellants' claim is within the scope of the agreement, the controversy must be submitted to arbitration.' *Messa v. State Farm Insurance Company, supra* at 600, 641 A.2d at 1170. An agreement to arbitrate a dispute is an agreement to submit oneself as well as one's dispute to the arbitrators' jurisdiction. Therefore, a party who can establish that he did not agree to arbitrate may be entitled

to enjoin an arbitration proceeding. *Gaslin Inc. v. L.G.C. Exports Inc.,* 334 Pa. Super. 132, 141, 482 A.2d 1117, 1122 (1984) (quoting *Hoffman v. Gekoski,* 250 Pa. Super. 49, 53, 378 A.2d 447, 448 (1977) (en banc), citing *Flightways Corporation v. Keystone Helicopter Corporation,* 459 Pa. 660, 331 A.2d 184 (1975))." *Smith v. Cumberland Group Ltd.,* 687 A.2d 1167, 1171 (Pa. Super. 1997). (footnote omitted)

The threshold issue of whether a party has agreed to arbitrate is a jurisdictional question to be decided by a court. *Id.*

Plaintiff asserts that to the extent it is a party to the agreement, none of its claims, except breach of contract, arise out of or relate to the agreement. We disagree. Initially we note that Two Rivers asserts rights to the Benatec—City-Suburban agreement directly, through its agent James Talley, as well as a third-party beneficiary thereto. (Complaint ¶¶3, 5, 6, 19.) In either capacity, Two Rivers is bound by the same limitations set forth in the agreement as would be the signatories of the agreement. See *In re: The Prudential Insurance Company of America Litigation,* 133 F.3d 225, 229 (3d Cir. 1998) ("a variety of non-signatories of arbitration agreements have been held to be bound by such agreements under ordinary common-law contract and agency principles"); *Johnson v. Pennsylvania National Insurance,* 527 Pa. 504, 508, 594 A.2d 296, 298-99 (1991) ("third-party beneficiaries are bound by the same limitations in the contract as the signatories of that contract" including arbitration provisions).

Our Supreme Court has held that arbitration language materially identical to paragraph 5.1, providing for mandatory arbitration of "any controversy or claim arising out of or relating to this agreement or the breach thereof," is "framed in the broadest conceivable language from

which it must be concluded that the parties intended the scope of the submission to be unlimited." *Ambridge Borough Water Authority v. Columbia,* 458 Pa. 546, 551, 328 A.2d 498, 501 (1974). (citations omitted) See also, *Smith v. Cumberland Group Ltd.,* 687 A.2d at 1172-73 and *Woodward Heating Etc. v. American Arbitration Association,* 259 Pa. Super. 460, 466, 393 A.2d 917, 920 (1978) (en banc).

In considering the scope of unlimited arbitration clauses, courts should interpret them *"to extend to any dispute arising from the contractual relationship." Waddell v. Shriber,* 465 Pa. 20, 30, 348 A.2d 96, 101 (1975) *(Waddell I).* (emphasis added) See also, *Ambridge Borough,* 458 Pa. at 551-52, 328 A.2d at 501 (where there is an unlimited arbitration clause, "any dispute which may arise between the parties concerning the principal contract is to be settled to its terms").

Two Rivers' claims of promissory estoppel, negligence and negligent misrepresentation fall within the "unlimited" scope of the arbitration clause. Two Rivers' allegations are "claims, counterclaims, disputes or other matters . . . arising out of or relating to [the Benatec—City-Suburban] agreement . . . ." All three claims are directly based on the allegedly deficient environmental assessment performed by Benatec which was the subject of the Benatec—City-Suburban agreement. Thus, all three claims clearly "arise from the contractual relationship." *Ambridge Borough, supra.*

The fact that these claims are not characterized as contract actions is not determinative of arbitrability. Our Superior Court rejected a similar argument in *Waddell v. Shriber,* 238 Pa. Super. 241, 357 A.2d 571 (1976) *(Waddell II).* There, the arbitration provision was equally broad providing for arbitration of "any controversy" arising out of the parties' business relationship. The court held a claim for defamation, an intentional tort,

was arbitrable. The court stated, "[t]he phrase 'any controversy' is certainly broad enough to embrace tort as well as contractual disputes, the only limitation being that the dispute has its roots in the applicable relationship between the parties." *Id.* at 246, 357 A.2d at 573. See also, *Bergquist Co. v. Sunroc Corp.,* 777 F. Supp. 1236, 1247 (E.D. Pa. 1991) ("unlimited" arbitration provision encompassed product liability, strict liability and negligence claims since they arose out of the same facts that made up the breach of contract claim), and *Moss v. Prudential-Bache Securities Inc.,* 18 Phila. 436, 450-51 (1989). But see, *Hazleton Area School District v. Bosak, supra* (Pellegrini, J., dissenting). Any other conclusion would frustrate the intent of arbitration agreements wherein arbitrability would depend entirely upon the characterization of a claim instead of whether the claim related to the subject matter of the arbitration clause.

Because we find plaintiff's claims are properly arbitrable, we need not address the remaining objections. Accordingly, we enter the following:

## ORDER

And now, May 7, 1998, defendant Benatec's preliminary objection raising alternate dispute resolution is hereby sustained. Plaintiff's action is hereby dismissed.