J. S50015/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SALLY JO BEAM, ADMINISTRATOR OF THE ESTATE OF DUANE L. BEAM | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSEPH O. GEBRON AND ANTHONY SALINO | : | |
| | : | No. 1985 WDA 2013 |
| APPEAL OF:  JOSEPH O. GEBRON, | : | |
| | : | |
| Appellant | : | |

Appeal from the Order Entered November 20, 2013,
in the Court of Common Pleas of Allegheny County
Civil Division at No. GD 13-000470

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND ALLEN, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:　　　**FILED JANUARY 14, 2015**

Joseph O. Gebron ("Gebron") appeals from the order of November 20, 2013, denying his petition to compel arbitration.  We affirm.

On January 7, 2013, plaintiff/appellee Duane L. Beam ("Beam")[1] filed a complaint against Gebron and Anthony Salino ("Salino").[2]  According to the complaint, Gebron and Salino were employees of Mercer Capital, Ltd. ("Mercer"), a New York brokerage firm.  Beam brought claims for fraudulent

---

[1] On May 21, 2014, we granted the application for substitution of Sally Jo Beam, administratrix of the estate of Duane L. Beam, and substituted Sally Jo Beam as appellee.

[2] On November 19, 2013, the trial court granted judgment on the pleadings in favor of Beam and against Salino.

misrepresentation under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa.C.S.A. § 201-1 *et seq.*, in connection with Beam's purchase from Mercer of five unregistered private placement common stock investments. Default judgment was entered against Gebron, who proceeded to file a petition to open and/or strike the default judgment, as well as a petition to compel arbitration. Beam denied that he signed any pre-dispute arbitration agreement. Following hearings before the Honorable Timothy P. O'Reilly, the trial court granted the petition to open judgment but denied Gebron's petition to compel arbitration. The trial court found that there was a legitimate dispute of fact as to whether Beam had actually signed the documents in question, including an October 27, 2008 Options Agreement. (Trial court opinion, 1/14/14 at 2.) The trial court also noted that Mercer had gone into bankruptcy and all records were lost or destroyed. (*Id.*) The trial court ordered that all other pending defenses, with the exception of arbitration, remained and directed the parties to proceed to litigation on the remaining claims and defenses. This timely appeal followed.[3]

Gebron has raised the following issues for this court's review:

> 1. Did the court err in denying defendant Gebron's request to compel arbitration?
>
> 2. Did the Options Client Agreement and Approval Form, along with FINRA industry rules, constitute a binding and enforceable

---

[3] An order denying a petition to compel arbitration is appealable as of right. *Elwyn v. DeLuca*, 48 A.3d 457, 460 n.4 (Pa.Super. 2012) (citations omitted).

> agreement as between the relevant parties to require arbitration?
>
> 3. Assuming, arguendo, there were not a validly signed arbitration agreement in this circumstance, would the law compel arbitration under theories of estoppel and other principles espoused in Brodene v. Biltmore Securities, Inc., 1998 WL 214766 (W.D.N.Y. 1998)[?]

Gebron's brief at 6.

> We review a trial court's denial of a motion to compel arbitration for an abuse of discretion and to determine whether the trial court's findings are supported by substantial evidence. In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement.

*Elwyn*, 48 A.3d at 461, quoting ***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1270 (Pa.Super. 2004) (citations omitted).

> By now it has become well established that '(S)ettlement of disputes by arbitration are no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and with our dockets crowded and in some jurisdictions congested arbitration is favored by the courts.' ***Mendelson v. Shrager***, 432 Pa. 383, 385, 248 A.2d 234, 235 (1968). When one party to an agreement to arbitrate seeks to enjoin the other from proceeding to arbitration, judicial inquiry is limited to the questions of whether an agreement to arbitrate was entered into and whether the dispute involved falls within the scope of the arbitration provision. ***Borough of Ambridge Water Authority v. J. Z. Columbia***, 458 Pa. 546, 328 A.2d 498 (1974). Thus a party who can establish that he did not agree to arbitrate, or that the agreement to arbitrate, limited

> in scope, did not embrace the disputes in issue, may be entitled to enjoin an arbitration proceeding. ***See Westmoreland Hospital Association v. Westmoreland Construction Company***, 423 Pa. 255, 223 A.2d 681 (1966); ***Emmaus Municipal Authority v. Eltz***, 416 Pa. 123, 204 A.2d 926 (1964); ***Goldstein v. International Ladies' Garment Worker's Union***, 328 Pa. 385, 196 A. 43 (1938).

***Flightways Corp. v. Keystone Helicopter Corp.***, 331 A.2d 184, 185 (Pa. 1975).

In his first issue on appeal, Gebron claims that although the original Account Opening agreement could not be located, Beam also signed an Options Agreement which contained an arbitration clause. (Gebron's brief at 13.) The Options Agreement provided that "The arbitrability of disputes under this agreement shall be governed by the Federal Arbitration Act." (***Id.***) According to Gebron, this agreement was part of the set of account opening documents Beam signed when he opened his account. (***Id.*** at 13-14.)

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.

***Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.***, 636 F.2d 51, 54 (3rd Cir. 1980) (footnote omitted).

Beam argued that his signature on the Options Agreement was fraudulent. Beam claimed that his signature on the Options Agreement bore little resemblance to the authentic signatures he presented to the trial court. (Beam's brief at 27.) The trial court, after hearing argument on the issue, ruled that arbitration was not appropriate, "Based on this alleged forgery and Beam's denial of any agreement to arbitrate . . . ." (Trial court opinion, 1/14/14 at 2.) The trial court concluded that the disputed fact of signature was a jury question. (*Id.*) As this is not a fact-finding court, we are not inclined to disturb the trial court's ruling in this regard.

Gebron relies on ***Brodene v. Biltmore Securities, Inc.***, 1998 WL 214766 (W.D.N.Y. 1998), which is readily distinguished. There, the court enforced the pre-dispute arbitration provision even though Brodene never actually signed the new account application. The court noted that a party may be bound by an agreement to arbitrate even absent a signature, and that a party's intent to agree to an arbitration provision may be inferred from his conduct. ***Id.*** at *6 (citations omitted). In ***Brodene***, there was evidence that he had received the new account package containing the arbitration clause but simply shelved it without reading it. ***Id.*** at *2. In addition, Brodene was requested several times, both in writing and in recorded telephone conversations, to sign and return the agreement. In fact, Brodene acknowledged having received the customer agreement but told Biltmore that his attorneys advised him not to sign it. ***Id.*** at *4. In the

meantime, Brodene continued to invest funds with Biltmore, totaling $343,000. *Id.* The court concluded that by his conduct, Brodene had assented to proceed pursuant to the customer agreement:

> . . . this Court concludes that, in light of the facts that after opening an account with Biltmore, Brodene was sent and had received a copy of the Customer Agreement and multiple copies of the Application referring to the arbitration provision and yet continued his business relationship with Biltmore without objection prior to November 30, 1995, by which time he had conducted nine transactions over the course of more than nine weeks and had invested in excess of $343,000, Brodene assented to and was and is bound by the Customer Agreement and its arbitration provision.

*Id.* at *7.

Instantly, Beam submitted a sworn affidavit denying that he signed the disputed Options Agreement or an account opening agreement with Mercer containing a pre-dispute arbitration clause. Beam also submitted evidence, in the form of authenticated signatures, that his signatures on the disputed documents were fraudulent. According to Beam, his authenticated signatures and those on the disputed documents vary considerably. (Beam's brief at 26.) Gebron did not conduct any depositions, submit any affidavits, or any other evidence to contradict Beam's assertions, other than copies of the disputed documents themselves. *Cf. Brodene*, *supra* at *3 (where there was evidence of Biltmore's business practices, including that it was their policy that a customer could undertake transactions even if he or she had not yet signed and returned the new account application).

In addition to the FAA, Gebron argues that Pennsylvania law, specifically 42 Pa.C.S.A. § 7304(a), requires arbitration.[4] Gebron also argues that as an agent of Mercer, he is a third-party beneficiary of the Options Agreement between Beam, Mercer, and RBC, Mercer's clearing firm. Obviously, these arguments are dependent upon first establishing that Beam, in fact, signed the disputed documents containing the pre-dispute arbitration provision. The trial court, after several hearings on the matter, concluded that Gebron did not meet his burden in this regard. Therefore, the initial hurdle, that the parties entered into an agreement to arbitrate, was not cleared. For these reasons, we determine the trial court did not abuse its discretion in denying Gebron's petition to compel arbitration and in ordering the parties to litigate this matter in court.

Order affirmed. Beam's application for an order taxing fees and costs, including attorney's fees, against Gebron for filing an arbitrary and frivolous appeal is hereby denied.

---

[4] On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

42 Pa.C.S.A. § 7304(a).

J. S50015/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/14/2015