J-A22006-25

2026 PA Super 39

| | | |
|---|---|---|
| NADEYAH COOK A/K/A HAYEDAN COOK, AND SHOALYN BROWN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED | : : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | | |
| | | No. 3179 EDA 2024 |
| PHILADELPHIA FEDERAL CREDIT UNION | | |
| Appellant | | |

Appeal from the Order Dated October 31, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  October Term, 2023, No. 01870

BEFORE:   LAZARUS, P.J., SULLIVAN, J., and STEVENS, P.J.E.*

OPINION BY LAZARUS, P.J.:                    **FILED MARCH 2, 2026**

Philadelphia Federal Credit Union ("PFCU") appeals from the order, entered in the Court of Common Pleas of Philadelphia County, overruling its preliminary objection, **see** Pa.R.C.P. 1028(a)(6), seeking to compel arbitration[1] of the claims alleged in a putative class action complaint filed by Appellees, Nadeyah Cook, a/k/a Hayedan Cook, and Shoalyn Brown, on behalf of themselves and all others similarly situated.   After careful review, we reverse.

_____

* Former Justice specially assigned to the Superior Court.

[1] An order overruling preliminary objections seeking to compel arbitration is immediately appealable as an interlocutory appeal as of right pursuant to 42 Pa.C.S.A. § 7320(a) and Pa.R.A.P. 311(a)(8).  **See Petersen v. Kindred Healthcare, Inc.**, 155 A.3d 641, 644 n.1 (Pa. Super. 2017).

The trial court set forth the factual and procedural history of this matter as follows:

> [On October 18, 2023, n]amed plaintiffs, [] Cook and [] Brown, filed this putative class action on behalf of themselves and a class of similarly situated persons who obtained motor vehicle financing ("auto loans") from [PFCU] in connection with which they allege that PFCU "failed to provide proper notice of repossession and disposition of [plaintiffs'] repossessed" vehicles.[2]
>
> [Plaintiffs filed an amended complaint on December 22, 2023.] PFCU filed preliminary objections to the amended complaint in which PFCU claim[ed] this dispute is subject to an arbitration provision (hereinafter the "Arbitration Agreement") contained in the membership "Agreements and Disclosures" (hereinafter the "Membership Agreement") between the named plaintiffs and PFCU. The facts relevant to the court's determination of this issue are not in dispute.
>
> [] Brown became a member of PFCU on November 6, 2017. At the time she became a member, the PFCU Membership Agreement did not contain an Arbitration Agreement. In February[] 2019, [] Brown signed up to receive paperless notices from PFCU. In or about January of 2020, PFCU sent [] Brown the Arbitration Agreement[,] which modified the Membership Agreement she had received when she joined. The Arbitration Agreement gave her the right to accept or reject its terms as follows:
>
> > **RIGHT TO REJECT THIS RESOLUTION OF DISPUTES BY ARBITRATION PROVISION.**
> >
> > YOU MAY CHOOSE TO REJECT THIS RESOLUTION OF DISPUTES BY ARBITRATION PROVISION BY SENDING US WRITTEN NOTICE AS DESCRIBED BELOW:
> >
> > Agreement to the Resolution of Disputes by Arbitration provision:

---

[2] Appellees, plaintiffs below, claimed that the repossession notices issued by PFCU failed to comply with Article 9 of the Uniform Commercial Code, 13 Pa.C.S.A. §§ 9601-9628, which governs the repossession of vehicles in Pennsylvania.

1. If You agree to be bound by the above Resolution of Disputes by Arbitration provision, then no action is needed on Your part.

2. If You take no action, then effective immediately Your Accounts will be bound by this Resolution of Disputes by Arbitration provision.

Rejection of the Resolution of Disputes by Arbitration provision:

1. If You do not agree to be bound by this Resolution of Disputes by Arbitration provision, You must send Us written notice that You reject the Resolution of Disputes by Arbitration provision within 30 days of account opening or within 30 days of receiving this notice, whichever is later, and include the following information:

    a. Your written notice must include: Your name, as listed on Your account, Your account number, and a statement that You reject the Resolution of Disputes by Arbitration provision, and;

    b. You must send Your written notice to Us at the following address: Philadelphia Federal Credit Union, Attn: Legal Department, 12800 Townsend Road, Philadelphia, PA 19154.

[Arbitration Agreement, at 4 (unpaginated) (bold in original).]

There is no evidence that [] Brown provided PFCU with the required written notice rejecting the Arbitration Agreement. On July 21, 2021, [] Brown obtained an auto loan from PFCU. In February of 2023, PFCU declared her in default of her auto loan, repossessed the vehicle subject to the loan, and sent her the repossession-related notices that she alleges were improper.

[] Cook is alleged to have become a member of PFCU on April 15, 2022, and he obtained an auto loan from PFCU on June 12, 2023. The Membership Agreement in effect in April of 2022, when [] Cook joined PFCU, contained the same Arbitration Agreement as was provided to [] Brown. It contained the same provisions allowing [] Cook to reject or accept the arbitration provisions. There is no evidence that [] Cook provided PFCU with the required written notice rejecting the Arbitration Agreement. In September of 2023, PFCU declared [] Cook in default of his auto loan,

repossessed the vehicle subject to the loan, and sent him the repossession-related notices that he alleges were improper.

The Arbitration Agreement, which was offered to, and not rejected by, both named plaintiffs, provides as follows:

**BINDING ARBITRATION AND CLASS ACTION WAIVER**

**RESOLUTION OF DISPUTES BY ARBITRATION:** THIS SECTION CONTAINS IMPORTANT INFORMATION REGARDING YOUR ACCOUNTS AND ALL RELATED SERVICES. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY DISPUTES BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY TRIAL AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, THE DISPUTE IS SUBMITTED TO A NEUTRAL PARTY, AN ARBITRATOR, INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES MAY BE MORE LIMITED THAN RULES APPLICABLE IN COURT.

**AGREEMENT TO ARBITRATE DISPUTES.** Either You or We may elect, without the other's consent, to require that any dispute between Us concerning Your Accounts and the services related to Your Accounts be resolved by binding arbitration, except for those disputes specifically excluded below.

\* \* \*

**DISPUTES COVERED BY ARBITRATION.** YOU ACKNOWLEDGE THAT IN ARBITRATION THERE WILL BE NO RIGHT TO A JURY TRIAL. *Any claim or dispute relating to or arising out of Your Accounts or our relationship will be subject to arbitration, regardless of whether that dispute arose before or after Your receipt of this notice*. Disputes include claims made as part of a class action, private attorney general or other representative action, it being expressly understood and agreed to that the arbitration of such claims must proceed on an individual (non-class, non-representative) basis and the arbitrator may award relief only on an individual (non-class, non-representative) basis. Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions. Any questions about whether disputes are subject to arbitration

- 4 -

shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

All disputes are subject to arbitration, no matter what legal theory they are based on, or what remedy (damages, or injunctive or declaratory relief) they seek. Disputes include any unresolved claims concerning any services relating to Your Accounts. Disputes include not only claims made directly by You, but also made by anyone connected with You or claiming through You, such as a joint account holder, account beneficiary, employee, representative, agent, predecessor or successor, heir, assignee, or trustee in bankruptcy. Disputes include not only claims that relate directly to the Credit Union, but also its parent, affiliates, successors, assignees, employees, and agents, and claims for which We may be directly or indirectly liable, even if We are not properly named at the time the claim is made. Disputes include claims based on any theory of law, contract, statute, regulation, tort (including fraud or any intentional tort), or any other legal or equitable ground, and include claims asserted as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and claims made independently or with other claims. If [a] party initiates a proceeding in court regarding a claim or dispute which is included under this Resolution of Disputes by Arbitration provision, the other party may elect to proceed in arbitration pursuant to this Resolution of Disputes by Arbitration provision.

**DISPUTES EXCLUDED FROM ARBITRATION.** Disputes filed by You or by Us individually in a small claims court are not subject to arbitration, so long as the disputes remain in such court and advance only an individual (non-class, nonrepresentative) claim for relief. However, if a matter in small claims court is removed, transferred, or appealed to a non-small claims court, that claim shall be subject to this Resolution of Disputes by Arbitration provision. Disputes filed by You or by Us related to a consumer credit transaction secured by a dwelling will also be excluded from arbitration.

[Arbitration Agreement, at 1-2 (unpaginated) (bold in original; italic emphasis added).]

Trial Court Opinion, 10/31/24, at 1-5 (heading, unnecessary capitalization, and footnotes omitted).

Following briefing and oral argument, the trial court issued an order on October 31, 2024, overruling PFCU's preliminary objections. In its accompanying opinion, the trial court concluded that the Arbitration Agreement was a "valid, binding agreement" with terms "sufficiently explicit to inform the plaintiffs that they were waiving their constitutional right to a jury trial by agreeing to arbitrate[.]" *Id.* at 6. Nevertheless, the court found that the Arbitration Agreement "contains multiple conflicting descriptions of the types of disputes it covers[.]" *Id.* at 7. The court noted that the Arbitration Agreement contains both broad language, such as "all disputes" and "the entire 'relationship' between plaintiffs and PFCU," as well as narrower language limiting its coverage to "'accounts' and account 'related services.'" *Id.* at 7-8. The court agreed with Plaintiffs that "auto loans are not a specific 'account' type discussed in the Membership Agreements" and PFCU pointed to no "loan or account documents expressly stating that the auto loans are 'services' related to [P]laintiffs' accounts with PFCU." *Id.* at 8. Thus, the court turned to the rules governing the interpretation of contracts and interpreted the language of the Arbitration Agreement against its drafter, PFCU, concluding that the parties' disputes are not subject to arbitration. *See id.* at 9-10.

On November 20, 2024, PFCU filed a motion for reconsideration, which the trial court denied on November 27, 2024. PFCU filed a timely notice of

appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On February 25, 2025, the trial court filed an opinion stating as follows:

> [A]s set forth in PFCU's [Rule 1925(b)] statement[,] the case law interpreting the Federal Arbitration Act ("FAA"), which appears to apply to the parties' Arbitration Agreements, prefers courts to resolve ambiguities regarding the scope of arbitration provisions in favor of arbitration rather than by employing state law contract principles such as contra proferentum.[3]
>
> The parties did not have an opportunity to litigate this issue before [the trial] court. Therefore, the court respectfully requests that the [Superior Court] remand the case to [the trial] court to allow for briefing, argument, and a decision on the issue of whether the parties' ambiguous Arbitration Agreement must be construed in favor of sending plaintiffs' claims to arbitration under the federal case[ ]law interpreting and applying the FAA.

Trial Court Opinion, 2/25/25, at 1-2 (unnecessary capitalization and italics omitted).

PFCU raises the following claims for our review:

> 1. Did the trial court err in concluding that the Arbitration Agreement was ambiguous and Plaintiffs' claims did not fall within its scope?
>
> 2. Did the trial court err in applying contra proferentem to construe the ambiguity in the arbitration agreement against PFCU, rather than resolving that ambiguity in favor of arbitration as required by the FAA?
>
> 3. Did the trial court err by disregarding that extrinsic evidence and prematurely applying contra proferentem to construe the Arbitration Agreement against PFCU?

---

[3] "Under general contract rules, a promise[,] if ambiguous, [] will be construed [c]ontra proferentum, against the party having drafted it." ***Egyptian Sands Real Estate, Inc. v. Polony***, 294 A.2d 799, 803 (Pa. Super. 1972)

4. Did the trial court err in failing to fulfill this obligation and concluding that Plaintiffs' claims were not subject to arbitration?

5. Did the trial court err by not holding an evidentiary hearing to determine the scope of the Arbitration Agreement before denying PFCU's preliminary objections?

Brief of Appellant, at 2-5 (edited for brevity; unnecessary capitalization omitted).

We begin by noting that our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. *Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1112 (Pa. Super. 2007). As contract interpretation is a question of law, our review of the trial court's decision is de novo and our scope is plenary. *Id.* at 1112-13.

We first consider several general principles of contract interpretation:

When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. In construing a contract, we must determine the intent of the parties and give effect to all of the provisions therein. An interpretation will not be given to one part of the contract which will annul another part of it.

*Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001) (citations and quotation marks omitted). A contract must be interpreted as a whole, and an interpretation that gives effect to all of the contract's provisions is preferred. *Midomo Company, Inc. v. Presbyterian Housing Development Co.*, 739 A.2d 180, 191 (Pa. Super. 1999). In addition, a preferred contract

interpretation ascribes under all circumstances "the most reasonable, probable, and natural conduct to the parties." *Id.*

Although arbitration cannot be compelled in the absence of an express agreement to arbitrate, our Commonwealth's well-established public policy favors arbitration:

> It is unquestioned that arbitration is a process favored today in this Commonwealth to resolve disputes. By now it has become well[-]established that settlement of disputes by arbitration [is] no longer deemed contrary to public policy. In fact, our statutes encourage arbitration and[,] with our dockets crowded and[,] in some jurisdictions[,] congested, arbitration is favored by the courts.

*Huegel v. Mifflin Construction Co., Inc.*, 796 A.2d 350, 358 (Pa. Super. 2002), quoting *Commonwealth, Office of Admin. v. Pennsylvania Labor Rel. Bd.*, 598 A.2d 1274, 1277–78 (Pa. 1991).

Our Commonwealth's general policy toward arbitration is consistent with federal policy, as set forth in the FAA,[4] which applies to written arbitration agreements that are part of "a contract evidencing a transaction involving interstate commerce." *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 878, 880 (Pa. Super. 2006), quoting 9 U.S.C. § 2; *Dickler v. Shearson Lehman Hutton, Inc.*, 596 A.2d 860, 862 (Pa. Super. 1991). As explained by the United States Supreme Court, "[s]ection 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460

_____

[4] 9 U.S.C. §§ 1-14.

U.S. 1, 24 (1983). To effectuate this liberal federal policy in favor of arbitration, the FFA requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Id.* at 24.

To determine whether arbitration should be compelled, we employ a two-part test: "The first determination is whether a valid agreement to arbitrate exists. The second determination is whether the dispute is within the scope of the agreement." *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1270 (Pa. Super. 2004) (citations omitted). "[W]here the arbitration provision is a broad one, and '[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Provenzano v. Ohio Valley Gen. Hosp.*, 121 A.3d 1085, 1096 (Pa. Super. 2015), quoting *E.M. Diagnostic Systems, Inc. v. Local 169, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 812 F.2d 91, 95 (3rd Cir. 1987). "A 'broad' arbitration clause in a contract is one that is unrestricted, contains language that encompasses all disputes which relate to contractual obligations, and generally includes 'all claims arising from the contract regardless of whether the claim sounds in tort or contract.'" *Provenzano*, 121 A.3d at 1096, quoting *Smay*, 864 A.2d at 1276.

Prior to addressing PFCU's claims, we must first determine whether the trial court properly concluded that a valid agreement to arbitrate exists.[5] "Whether an agreement to arbitrate disputes exists is a question of law." *Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 604 (Pa. Super. 2003). "When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law." *Id.*

Appellees argue that the Arbitration Agreement is unenforceable because it did not "put the [Appellees] on notice of any waiver of the

_____

[5] Although the issue was not raised by Appellant in this case, Appellees assert in their brief that the trial court erred in finding that the arbitration clause was enforceable. Generally, "[a]n appellee may not raise issues on appeal not raised by the appellant except by filing a cross appeal." *Bullman v. Giuntoli*, 761 A.2d 566, 580 (Pa. Super. 2000) (Johnson, J., concurring and dissenting). Here, however, Appellees were not "aggrieved" by the order under consideration and, thus, were not entitled to cross-appeal. *See Smith v. Grab*, 705 A.2d 894 (Pa. Super. 1997) (quashing cross-appeal as cross-appellant not aggrieved by the order appealed from). In essence, in raising the enforceability issue, Appellees are simply "argu[ing] for affirmance of the order . . . , even if it requires reliance upon a theory different from that relied upon by the trial court." *Bullman*, 761 A.2d 575. Here, where we ultimately conclude that Appellees' claims fall within the scope of the Arbitration Agreement, the issue of the agreement's enforceability could become the basis for a later appeal by the current Appellees. As both parties have briefed the issue and the trial court has addressed it in its opinion, we conclude that it is in the interest of judicial economy to review the claim here. *See id.* (addressing claim supporting affirmance raised by appellee who, as prevailing party, was not entitled to cross-appeal and concluding that failure to address claim "could then invite another appeal[,] . . . thereby occasioning an unnecessary delay and wasting of judicial resources").

constitutional right to a jury trial."[6]   Brief of Appellees, at 32.   Appellees'

argument is unpersuasive.

In the case sub judice, Appellee Brown opened an account with PFCU in

2017, at which time she signed a Membership Application, in which she

acknowledged that she had "received, read[,] and agree[d] to comply with

the terms and conditions of the [Membership Agreement]."   Brown

Membership Application, 11/6/17.   The Membership Agreement in effect at

the time Brown submitted her Membership Application stated that the

"Agreement may be amended by [PFCU] at any time."   Brown Membership

Agreement, at 2.   On February 5, 2019, Brown enrolled in PFCU's eNotices

_____

[6] To support their argument, Appellees rely on this Court's en banc decision in *Chilutti v. Uber Technologies, Inc.*, 300 A.3d 430 (Pa. Super. 2023) (en banc), in which we addressed an Internet "browse-wrap" arbitration agreement and concluded that it was invalid because the appellants took no action "that unambiguously manifested their assent to be bound by the terms and conditions" that included the agreement to arbitrate.   *Id.* at 449.   The Pennsylvania Supreme Court granted allowance of appeal in that case and, on January 21, 2026, issued an Opinion vacating our decision on the basis that we erred in concluding that the order in question was appealable as a collateral order.   *See id.*, --- A.3d ---, 2026 WL 156181 (Pa. 2026).   Accordingly, the Supreme Court remanded the case to this Court and directed us to quash the Chiluttis' appeal.   As such, the holding of *Chilutti* is no longer good law.   In any event, Appellees' reliance on *Chilutti* was misplaced, where that case specifically involved an Internet "browse-wrap" agreement and this matter involves a written credit union membership agreement.   To the extent that the amendment containing the arbitration agreement was conveyed to Appellee Brown electronically, she had previously taken the affirmative step of enrolling in PFCU's "eNotices and eStatements" and, by doing so, consented to the electronic receipt of all account disclosures, including "change of terms notices . . . any amendments or addenda to the Member Agreement or to the terms of any benefits, products, or services offered in connection with [Brown's] account."   Paperless Disclosures, at 1.

and eStatements, at which time she agreed that PFCU would provide her, via her on-file email address, with "any disclosures . . . in connection with [her] Account electronically rather than in paper form." Paperless Disclosure, at 1. Such disclosures included, "change of terms notices . . . any amendments or addenda to the Member Agreement or to the terms of any benefits, products, or services offered in connection with [Brown's] account." *Id.*

On or about January 3, 2020, PFCU sent email messages with the subject line "Important Changes to Your Account Terms" to members—such as Brown—who had opted in for electronic notice, notifying those members that PFCU was "adopting a new Arbitration of Claims and Disputes and Class Action Waiver provision." Arbitration Notice, 1/3/20; *see also* Affidavit of Patrick Williams, 12/6/23, at ¶ 15. The email advised members that the Arbitration Agreement would become effective on February 1, 2020, and that members had "until February 8, 2020 to exercise [their] right to opt out" of Arbitration Agreement. *Id.* The email further stated that, "[i]f [members] do not opt out of this provision the continued use of your credit union account will act as your consent to the new provision." *Id.* The email provided a bright blue hyperlink to the Arbitration Agreement and advised that opt-out instructions were contained in the Agreement. *See id.* Brown took no action to opt out of the Arbitration Agreement and continued to utilize her account. *See* Affidavit of Patrick Williams, 12/6/23, at ¶¶ 21-22.

Appellee Cook became a PFCU member on April 15, 2022, signing a Membership Application in which he, like Brown, agreed to comply with the

terms and conditions of the Membership Agreement, which by that point included the Arbitration Agreement. A copy of the Membership Agreement was mailed to Cook at the address on file with PFCU; Cook took no action to opt out of the Arbitration Agreement and continued to utilize his PFCU account. *See id.* at ¶¶ 24-26.

In light of the foregoing, it is clear that both Brown and Cook received notice of the Arbitration Agreement and the actions they needed to take to opt out of the Agreement and failed to exercise their right to opt out. Moreover, the language of the Arbitration Agreement was clearly sufficient to advise Appellees that, by not opting out of the Agreement, they were waiving their constitutional right to a jury trial, despite the absence of the word "constitutional" in the Agreement. Specifically, the Arbitration Agreement conspicuously states:

> ARBITRATION REPLACES THE RIGHT TO GO TO COURT, **INCLUDING THE RIGHT TO A JURY TRAL** AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, THE DISPUTE IS SUBMITTED TO A NEUTRAL PARTY, AN ARBITRATOR, **INSTEAD OF A JUDGE OR JURY**. ARBITRATION PROCEDURES MAY BE MORE LIMITED THAN RULES APPLICABLE IN COURT.
>
> . . .
>
> **YOU ACKNOWLEDGE THAT IN ARBITRATION THERE WILL BE NO RIGHT TO A JURY TRIAL**.

Arbitration Agreement, at 1 (unpaginated) (capitalization in original; bold emphasis added). Furthermore, the right to opt out of arbitration was also conspicuously stated:

- 14 -

**RIGHT TO REJECT THIS RESOLUTION OF DISPUTES BY ARBITRATION PROVISION.**

YOU MAY CHOOSE TO REJECT THIS RESOLUTION OF DISPUTES BY ARBITRATION PROVISION BY SENDING US WRITTEN NOTICE AS DESCRIBED BELOW.

Agreement to the Resolution of Disputes by Arbitration Provision:

1. If You agree to be bound by the above Resolution of Disputes by Arbitration provision, then no action is needed on Your part.

2. *If You take no action, then effective immediately Your Accounts will be bound by this Resolution of Disputes by Arbitration provision*.

*Id.* at 4 (unpaginated) (capitalization and bold in original; italic emphasis added). The Agreement then set forth the opt-out requirements, advising the member of: (1) the 30-day time limit within which to opt out; (2) the information to be included in the written opt-out notice; and (3) the address to which the opt-out notice must be sent. *See id.* Accordingly, we conclude that the parties "agreed in a clear and unmistakable manner to arbitrate their disputes," *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 97 (Pa. Super. 2015), and turn to the issues raised by PFCU on appeal.

First, PFCU argues that the trial court erred in concluding that the Arbitration Agreement was ambiguous and that Plaintiffs' claims did not fall within its scope. PFCU argues that the plain language of the Arbitration Agreement "broadly requires arbitration of 'any claim or dispute arising out of or relating to' Plaintiffs' accounts or relationship with PFCU, which is all-encompassing language that courts routinely enforce." Brief of Appellant, at 22-23. PFCU asserts that "Pennsylvania courts have consistently held that

provisions covering 'any claim or dispute relating to or arising out of' reflect the broadest possible intent to arbitrate virtually all disputes." *Id.* at 24, citing *Borough of Ambridge Water Auth. V. Columbia*, 328 A.2d 498, 501 (Pa. 1974); *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1273-74 (Pa. Super. 2004).

PFCU "puzzles" over the trial court's focus on the word "accounts" and whether auto loans qualify as such, arguing that the court's analysis "entirely misses the point" and that "[r]egardless of whether [or not] auto loans are '[a]ccounts,'[7] the Arbitration Agreement expressly extends to 'any claim or dispute relating to or arising out of . . . [the member's] *relationship*' with PFCU." Brief of Appellant, at 25-26 (emphasis in original). PFCU notes that the auto loans were available to Plaintiffs "solely because of their membership and consequent relationship with PFCU," and they "could not have applied for, much less obtained, these loans without first opening accounts and affirmatively agreeing to PFCU's Membership Agreement." *Id.* at 26. Accordingly, PFCU asserts that "[u]nder any reasonable reading, these auto loans . . . were part and parcel of the parties ongoing financial relationship." *Id.*

---

[7] PFCU argues that there is no ambiguity as to whether a "loan" falls into the category of "accounts." "The Membership Agreement repeatedly references 'loan accounts,' including provisions for transferring funds between deposit and loan accounts and using online banking services to make loan payments." Brief of Appellant, at 27. *See also* Electronic Fund Transfers Agreement and Disclosure, at ¶ 1.f., g. (referencing "loan accounts"). Thus, PFCU asserts, it is clear that "loans are treated as a type of account or account-related service under the Membership Agreement." Brief of Appellant, at 27.

Finally, PFCU argues that the trial court erred by "juxtapos[ing] various phrases in the Arbitration Agreement" to find that the agreement is ambiguous. *Id.* at 28. PFCU asserts that "this analysis is in direct contravention of Pennsylvania's contract interpretation principles," which direct that "'the entire contract should be read as a whole,' and courts must seek to 'give effect to all of its provisions.'" *Id.*, quoting *Commonwealth by Shapiro v. UPMC*, 208 A.3d 898, 911 (Pa. 2019). PFCU posits that the references to "accounts" and "related services" are "illustrative, not restrictive, and establish that the Arbitration Agreement is meant to capture the full breadth of the membership agreement with PFCU." Brief of Appellant, at 29. PFCU notes that the agreement specifically carves out two exceptions to its scope: disputes filed in small claims court and consumer credit transactions secured by a dwelling. *Id.* at 29-30, citing Arbitration Agreement, at 1 (unpaginated) (Disputes Excluded from Arbitration). Thus, PFCU asserts, "if PFCU had intended to exclude auto loan disputes from arbitration, it would have done so expressly." *Id.* at 30. In sum, PFCU argues that "[t]he clear and unambiguous language of the Arbitration Agreement confirms that auto loan disputes—arising directly from Plaintiffs' membership relationship with PFCU—are subject to arbitration." *Id.* at 31.

In response, Appellees argue that the Arbitration Agreement "was restricted to selected 'Accounts' and related services and relationships" because PFCU did not specifically include auto loans in the agreement's scope.

Brief of Appellees, at 11. Appellees focus their argument on the following portion of the Arbitration Agreement:

> AGREEMENT TO ARBITRATE DISPUTES. Either You or We may elect, without the other's consent, to require that any dispute between Us concerning **Your Accounts** and the services related to **Your Accounts** be resolved by binding arbitration, except for those disputes specifically excluded below.

Brief of Appellees, at 12, quoting Arbitration Agreement, at 1 (unpaginated) (emphasis added by Appellees).

Appellees note that, while the term "account" is not defined in the Arbitration Agreement, it is defined in the both the 2017 and 2021 Membership Agreements.[8] The 2017 version of the Membership Agreement provides that "'Account' means any account or accounts established for You as set forth in these Agreements and Disclosures." Membership Agreement (2017), at 1 (unpaginated). Appellees cite ten different types of accounts delineated in the 2017 Membership Agreement, none of which includes auto loans. *See* Brief of Appellees, at 12-13, citing Membership Agreement (2017), at 3-4 (unpaginated). Appellees further note that the 2021 version of the Membership Agreement defines "account" as "any one or more share or deposit accounts you have with [PFCU]." Brief of Appellees, at 14, quoting

_____

[8] The 2017 version of the Membership Agreement was applicable to Appellee Brown's account at the time it was established in November 2017 and stated that the agreement "may be amended by PFCU at any time." Affidavit of Patrick Williams, 12/6/23, at ¶ 8; Membership Agreement (2017), at 2 (unpaginated). The 2021 version of the Membership Agreement was in effect at the time Appellee Cook opened her account in April 2022. *See* Affidavit of Patrick Williams, 12/6/23, at ¶ 24.

Membership Agreement (2021), at 1 (unpaginated). "Notably absent," Appellees assert, "is any account related to an auto loan." Brief of Appellees, at 14 (emphasis omitted).

Appellees further argue that the "opt-out" provision contained in the Arbitration Agreement "specifies that the consequence of taking no action to reject the arbitration provision is that the specified 'accounts' are subject to the arbitration provision." *Id.* at 15, citing Arbitration Agreement, at 4 (unpaginated) ("If you take no action, then effective immediately **Your Accounts** will be bound by this Resolution of Disputes [by] Arbitration provision.") (emphasis added by Appellees). Appellees argue that "[t]his confirms the parties' intent to limit applicability of the arbitration provision to the specified accounts and related services, which excludes the parties' auto loan notes." Brief of Appellees, at 15.

Appellees further note that, when they agreed to finance their vehicles with PFCU, they each signed a fully integrated Note, disclaiming the existence of other agreements, that did not contain an arbitration clause. *Id.* They assert that, "[h]ad [PFCU] wanted to make an integrated auto loan subject to a provision of an earlier contract, it could have included such an agreement within the auto loan contracts, but it chose not to do so." *Id.* at 16.

Finally, Appellees take issue with PFCU's interpretation of the "Disputes Covered by Arbitration" clause, which provides that "[a]ny claim or dispute relating to or arising out of your accounts or our relationship will be subject to arbitration" and that "[d]isputes include any unresolved claims concerning any

services related to Your Accounts." Arbitration Agreement, at 1 (unpaginated). Appellees argue that, because PFCU "admitted that the term 'Accounts' does not include . . . auto loans, it logically follows that 'services related to [those] Accounts' would also exclude . . . auto loans." Brief of Appellees, at 18. Moreover, Appellees assert that the term "'relationship' . . . cannot refer to all conceivable relationships between the parties[.]" *Id.*, quoting *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1272 (Pa. Super. 2024). Rather, the term must be construed "in context, meaning that it applies to the parties' relationship **as applicable to the specified accounts**." Brief of Appellees, at 18 (emphasis in original).

Upon our review, we agree with PFCU that, when read as a whole, *Midomo*, *supra*, the language of the Arbitration Agreement is broad and unambiguous and plainly encompasses Appellees' claims. The Agreement clearly states that any and all disputes arising out of Appellees' PFCU accounts **or the parties' relationship**—subject to the two specific exceptions carved out in the Agreement that are not applicable here—are subject to arbitration. Whether or not Appellees' loans qualify as "accounts" as defined in the Membership Agreement, as argued by Appellees, is of no moment. The loans arise from, and form a part of, the parties' relationship.[9] As such, they are subject to arbitration.

_____

[9] *McNulty*, upon which Appellees rely for the proposition that the term "relationship" cannot refer to all conceivable relationships between the parties,
*(Footnote Continued Next Page)*

Accordingly, we conclude that the Arbitration Agreement is enforceable and unambiguously encompasses the disputes related to the car loans between PFCU and Appellees. Therefore, we reverse the trial court's order dismissing PFCU's preliminary objection in the form of a petition to compel arbitration and remand the case to the trial court for the entry of an order referring the parties' disputes to arbitration in accordance with the Arbitration Agreement.[10]

Order reversed. Case remanded with instructions. Appellees' application to deny trial court's request to remand denied as moot. Jurisdiction relinquished.

_____

is inapposite. In that case, a client of H&R Block signed two contracts. The first was a contract with Block for Block to prepare and file the client's tax return. The second was an agreement between the client and a third-party bank for the client to receive a refund anticipation loan. **Block was not a party to the loan agreement** but was a beneficiary of an arbitration provision in the loan agreement. When the client brought a claim related to Block's filing of the client's tax returns, Block attempted to compel arbitration based on the third-party loan agreement. The Court found that the language of the arbitration provision, while broad, applied only to the third-party loan transaction, not the services provided by Block pursuant to its own contract with the client. In contrast to *McNulty*, here, Appellees' auto loans were issued directly by PFCU as part of its ongoing relationship with its clients, Appellees, which relationship was governed by the Membership Agreement containing the Arbitration Agreement.

[10] Due to our disposition, we need not address PFCU's remaining claims.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/2/2026</u>